IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:12-CV-266-FL

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of TGK ENTERPRISES, INC. d/b/a ENTERPRISE ELECTRICAL AND MECHANICAL CO., <br><br> Plaintiff, <br><br> v. <br><br> CLAYCO, INC. and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> Defendants. | ORDER |

This matter comes before the court on defendants' motion to dismiss and, in the alternative, motion to stay and compel arbitration (DE 19). Plaintiff responded in opposition, and defendants replied. The court previously denied plaintiff's motion for leave to file surreply, but allowed the parties to file two notices of recently decided authority. In this posture, the issues raised are ripe for ruling.

BACKGROUND

Plaintiff filed suit on September 12, 2012, asserting claims for damages against defendant Clayco, Inc. ("Clayco") on the basis of breach of contract, N.C. Gen. Stat. § 22C-2 et seq., and unjust enrichment. Plaintiff also asserts a claim against defendant Travelers' Casualty and Surety Company of America ("Travelers") on the basis of a surety bond pursuant to the Miller Act, 40 U.S.C. § 3131 et seq.

Plaintiff's claims against Clayco arise out of the execution and performance of a subcontract agreement to provide services for a federal construction project in Camp Lejeune, North Carolina. Clayco was awarded a contract by the federal government to design and build a dining hall and barracks at the Naval Facilities Engineering Command and Marine Corps Base in Camp Lejeune, North Carolina (the "project"). In connection with this project, Clayco executed a subcontract agreement with plaintiff, which is attached as an exhibit to the complaint, wherein for the exchange of payment of $5,138,000.00, plaintiff would perform installation and design of the HVAC, electrical, and plumbing work for the project.

According to the complaint, plaintiff performed and completed the work for the project as required in the subcontract agreement, but plaintiff has not been fully paid by Clayco. Plaintiff claims Clayco has breached the subcontract agreement by asserting improper "back-charges," failing to make timely and required payments, improperly coordinating and scheduling, failing to work with plaintiff in good faith to timely accomplish installation and design required by the subcontract agreement, and interfering with plaintiff's performance. Plaintiff asserts that $458,234.02 is past due and owing under the subcontract agreement, and that is owed more than $800,000.00 in costs incurred.

Plaintiff asserts that in connection with the project, Clayco purchased a Miller Act payment bond issued by Travelers, and that Travelers is a surety in connection with the contract between Clayco and the federal government. Plaintiff contends that all of its claims are recoverable under the Miller Act, and, where plaintiff has performed all applicable conditions precedent, Travelers and Clayco are jointly and severally liable to plaintiff for the damages claimed. Plaintiff asserts that it

2

Case 7:12-cv-00266-FL   Document 40   Filed 09/23/13   Page 2 of 19

attempted mediation with Clayco to resolve the dispute, and it has filed this lawsuit in order to protect its interests under the Miller Act.

On November 8, 2012, defendants filed a motion to dismiss and, in the alternative, to stay and compel arbitration, on the basis of an arbitration agreement in the subcontract, including the following provisions:

> A. Mediation: Any Claim arising out of or related to the Agreement shall be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable or other binding dispute resolution proceedings by either party.
>
> \*   \*   \*
>
> D. Arbitration: Claims which have not been resolved by mediation shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect at the time of the arbitration. The demand for arbitration shall be filed in writing with the other party to the Agreement and with the American Arbitration Association. The jurisdiction of the Arbitrator, and the arbitrability of any issue raised by the parties shall be decided by the Arbitrator.
>
> \*   \*   \*
>
> K. . . . . Any mechanic's liens or payment bond claims filed with a Court shall be promptly stayed pending resolution of the dispute in accordance with these dispute resolution provisions.

(Motion to Dismiss ¶¶ 4,6,7, quoting Compl. Ex. B, sections XXVI.A, D, K).

Defendants assert that these provisions comprise an arbitration agreement which deprive the court of subject matter jurisdiction of the parties' disputes, and that the complaint therefore should be dismissed. In the alternative, defendants assert that this court should stay the action in its entirety and compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 2, et seq.

COURT'S DISCUSSION

A. Standard of Review

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under section 3 of the FAA, "a court must stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543 (4th Cir.2005) (quoting 9 U.S.C. § 3).

The FAA reflects "a liberal federal policy favoring arbitration agreements," and "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." AT & T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1745 (2011) (internal citations omitted). In determining whether the dispute at issue is one to be resolved through arbitration, the court must "engage in a limited review to ensure that the dispute is arbitrable – i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food & Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002) (citations omitted).

B. Analysis

The parties in this case dispute both the validity and scope of the arbitration agreement in the subcontract. Plaintiff first contends that the arbitration agreement is unenforceable because it is unconscionable. Plaintiff next contends that the forum selection provisions contained in the arbitration agreement are in violation of North Carolina law, thus rendering the arbitration agreement void and unenforceable. With respect to the scope of the arbitration agreement, plaintiff

4

argues that the state statutory claim and the Miller Act claim are not arbitrable and that plaintiff should be allowed to proceed on those claims in this case. By contrast, defendant argues that the arbitration agreement is valid and that the court must dismiss and compel arbitration of all of plaintiff's claims. The court will address these arguments in turn below.

   1. Unconscionability

Under section 2 of the FAA, a party may seek revocation of an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract," including "generally applicable contract defenses, such as fraud, duress, or unconscionability." AT&T Mobility LLC, 131 S. Ct. at 1746 (quoting 9 U.S.C.A. § 2, additional citations omitted). The judicial inquiry is "highly circumscribed," and "the grounds for revocation must relate specifically to the arbitration clause and not just to the contract as a whole." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). In this case, where the subcontract is "governed by the laws of the State where the Project is located," (Compl. Ex. B, section XXVII.F), the court will apply North Carolina law in determining whether the arbitration agreement is unconscionable.

"A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 655 S.E.2d 362, 370 (2008). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Id. (citations omitted). "Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms." Id. The procedural/substantive analysis is "more of a sliding scale than a true dichotomy," and a finding of unconscionability "may be appropriate when a contract presents

5

pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." Id. (citation omitted).

In this case, plaintiff claims that the arbitration agreement was procedurally unconscionable because it was "not subject to negotiation," and because it was "drafted by Clayco and thrust upon TGK." (Opp. at 7). In support of this assertion, plaintiff attaches an affidavit of Chuck Mandrell, the president of TGK, wherein he states:

> With the exception of the contract price and some scope of work provisions of the Agreement, none of the material terms of the Agreement, including the terms related to dispute resolution, were negotiable and TGK was required to accept such terms to work on the project.
>
> TGK and Clayco entered into several agreements whereby TGK agreed to provide various services and materials as a subcontractor to Clayco, including the Camp Lejeune, North Carolina project at issue in the Complaint. These agreements also contained the same, non-negotiable dispute resolution provisions that are at instant issue.

(Opp., Ex. A, ¶¶ 5-6).

Under the circumstances of this case, the court finds that these assertions are insufficient to establish "'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power," required for procedural unconscionability under North Carolina law. Tillman, 655 S.E.2d at 370. Plaintiff is a sophisticated subcontractor, a finding which is supported both by the scope of work and expected performance under the subcontract, (see Compl., Ex. B), the contract price of $5,138,000.00, (id., Ex. B. p. 1), and the fact that plaintiff entered into multiple contracts to provide "various services and materials as a subcontractor to Clayco." (Opp., Ex. A, ¶ 6). Against this background, where plaintiff is a commercial entity free to contract in its own business interest, a finding of unfair surprise, lack of meaningful choice, and inequality of bargaining power is not warranted. In this respect, the subcontract agreement stands in contrast to

contracts found unconscionable involving "unsophisticated consumers contracting with corporate defendants" for provision of consumer goods or employment services. See e.g. Tillman, 655 S.E.2d at 370 (individuals obtained loans and insurance); Hooters, 173 F.3d 935-36 (company conditioned eligibility for raises and promotions upon existing employees signing arbitration agreement); Murray, 289 F.3d at 303 (arbitration agreement was condition of employment).

Plaintiff also has not established substantive unconscionability. Plaintiff argues that arbitration agreement is substantively unconscionable because of several elements. First, plaintiff contends the arbitration agreement lacks mutuality because Clayco can, at its sole option, invoke a hybrid mediation/arbitration procedure in subsection N of the dispute resolution provisions instead of arbitration as specified in subsection D. Second, plaintiff notes that the subsection N procedures are unconscionable because they forbid discovery, curtail evidence presentation, and require the arbitrator to select one of the parties' last best offers without modification. Third, plaintiff notes that subsection N procedures prevent confidential communication with the mediator, given that the mediator will become the arbitrator if the mediation fails.

As noted above in the background of this order, subsection D of the dispute resolution procedures in the subcontract provides as follows:

> D. Arbitration: Claims which have not been resolved by mediation shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect at the time of the arbitration. The demand for arbitration shall be filed in writing with the other party to the Agreement and with the American Arbitration Association. The jurisdiction of the Arbitrator, and the arbitrability of any issue raised by the parties shall be decided by the Arbitrator.

(Compl. Ex. B, Section XXVI.D). Subsection N, which is the focus of plaintiff's argument regarding substantive unconscionability, includes an alternative procedure at the option of Clayco.

In particular, this subsection sets for a mediation/arbitration procedure, which commences with the following mediation provisions:

> N. Notwithstanding the foregoing Paragraphs A through M of this Section XXVI, Contractor at its option may invoke the following dispute resolution provisions, to which Subcontractor agrees to be bound in lieu of the provisions stated in Paragraphs A through M above. Specifically, upon written application of Contractor, the parties agree to submit their dispute to resolution before the American Arbitration Association ("AAA") in accordance with the Construction Industry Mediation Rules of the AAA curently in effect at the time of mediation, adjusted as follows: (a) Contractor will file a written demand with the AAA for mediation of the dispute, with the dispute to be heard by a mediator in St. Louis, Missouri; (b) the mediation shall be completed within 60 days after written demand for mediation is served upon the other party; (c) the mediation shall be completed within 60 days after written demand for mediation is served upon the other party; (c) by no later than 14 days prior to the mediation, the parties shall serve upon the mediator and each other a written position statement, with exhibits, outlining their respective claims and defenses; (d) by no later than 3 days prior to the mediation, the parties shall serve upon the mediator and each other a written position statement in reply to that earlier filed by the other party;

(Id., subsection N). Then, with respect to arbitration, subsection N continues as follows:

> (e) after eight hours of actual mediation time to be conducted in a single day, if the matter is not resolved, the mediator shall immediately assume the role of an arbitrator; (f) the arbitrator shall not consider any item of evidence which was not produced by the parties in their respective statements of position nor disclosed to the other in the course of Mediation, all as determined by the arbitrator; (g) at such time as the mediator shall be become an arbitrator, each party shall promptly make one last, best and final offer and demand in writing, which shall be simultaneously submitted to the arbitrator; (h) the arbitrator shall then disclose to the parties the amounts of said last offers and demands; (i) within five days of having received said last offers and demands (but not earlier than seventy-two hours of having received said last offers and demands), the arbitrator shall issue an Award which shall adopt one and only one of said last offers or demands, without modification or amendment, and the same shall then constitute the Award. Each side shall bear its own attorneys fees, costs and expenses, including AAA fees and expenses. The Award of the arbitrator shall be final and binding, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof. If the Award is issued prior to the final completion of the Project, then the parties agree to sign a Change Order to reflect the Award.

(Id.).

The court finds that the elements of subsection N procedures raised by plaintiff in this case are not sufficient to establish substantive unconscionability. As an initial matter, the fact that the arbitration agreement leaves to Clayco's discretion the decision whether to invoke subsection N mediation/arbitration does not render the agreement unconscionable. See Senior Mgmt., Inc. v. Capps, 240 F. App'x 550, 553 (4th Cir. 2007) (stating that under North Carolina law "there is no requirement that an arbitration provision in the contract place an obligation to arbitrate on all parties to the contract").

Second, while subsection N sets forth circumscribed rules for evidence presentation and method of decisionmaking by the arbitrator, such rules apply to both parties equally and are not skewed to one side or the other. Such streamlined procedures may provide benefits to both contracting parties in a construction context to have disputes resolved as expeditiously as possible. Accordingly, these limitations do not render the arbitration agreement unconscionable. Indeed, as the Fourth Circuit has observed, "[w]hen contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial. One of these accoutrements is the right to pre-trial discovery." Burton v. Bush, 614 F.2d 389, 390 (4th Cir.1980) (internal citations omitted).

Third, the possibility of a dual role for a mediator/arbitrator is expressly contemplated by the American Arbitration Association Construction Industry Arbitration Rules, which allow a mediator to be appointed as arbitrator when requested by all parties. See American Arbitration Association Construction Industry Arbitration Rules R-10(a) ("R-10. Mediation (a) At any stage of the proceedings, the parties may agree to conduct a mediation conference under the AAA Construction Industry Mediation Procedures in order to facilitate settlement. Unless requested by all parties, the

9

mediator shall not be an arbitrator appointed to the case"). Although plaintiff claims that the American Arbitration Association has "frowned upon" the mediator/arbitrator role, (Opp. at 8), this does not render this procedure unconscionable, especially where sophisticated business entities have agreed to such a provision in a commercial contract.

Cases cited by plaintiff are instructively distinguishable. For example, in Hooters, the Fourth Circuit found recision of an arbitration agreement warranted where the employer arbitration rules that gave the employer several procedural rights that the employer did not have, including "unrestricted control" of the employer over selection of the arbitration panel, and the employer's exclusive right to modify the rules promulgated without notice to the employee. Hooters, 173 F.3d at 938-39; see also Murray, 289 F.3d at 303 (invalidating arbitration agreement which placed control over selection of arbitrator in hands of employer). None of these features are present in the instant arbitration agreement.

In sum, plaintiff has not established that the arbitration agreement in the subcontract is unconscionable.

### 2. Forum selection clause

Plaintiff argues that the forum selection provisions contained in the arbitration agreement are in violation of North Carolina law, thus rendering the arbitration agreement void and unenforceable. In particular, the subcontract provides that mediation and arbitration shall be conducted in St. Louis, Missouri. (Compl. Ex. B, section XXVI.C, D, N).[1] At the same time, the

---

[1] The agreement also provides an exception to this location if the arbitration is "joined with an arbitration between the Owner and the Contractor, in which case it shall take place in the location prescribed for in the General Contract." (Compl. Ex. B, section XXVI.C & D). Neither party contends that this exception applies, or that it would apply in such a manner as to mandate a different venue for arbitration other than St. Louis under the circumstances of this case.

10

Case 7:12-cv-00266-FL   Document 40   Filed 09/23/13   Page 10 of 19

subcontract provides that the subcontract is "governed by the laws of the State where the Project is located," (Compl. Ex. B, section XXVII.F), which in this case is North Carolina. Plaintiff points out that North Carolina General Statute Section 22B-3 provides in pertinent part:

> any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.

N.C. Gen. Stat. § 22B-3. Plaintiff argues that this statute serves to invalidate the arbitration agreement in the subcontract. By contrast, defendant contends that this provision and a similar provision in § 22B-2, which is more properly applicable to construction contracts,[2] both directly conflict with section 2 of the Federal Arbitration Act and are thus inapplicable.

"State law may . . . be pre-empted to the extent that it actually conflicts with federal law – that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 477 (1989) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). "In recognition of Congress' principal purpose of ensuring that private arbitration agreements are enforced according to their terms, [the Supreme Court has] held that the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the

---

[2] N.C. Gen. Stat. § 22B-2 provides, in pertinent part:

A provision in any contract, subcontract, or purchase order for the improvement of real property in this State, or the providing of materials therefor, is void and against public policy if it makes the contract, subcontract, or purchase order subject to the laws of another state, or provides that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state.

11

contracting parties agreed to resolve by arbitration.'" Volt, 489 U.S. at 478 (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).

In this case, plaintiff seeks to enforce N.C. Gen. Stat. 22B-3 to invalidate the arbitration agreement because the agreement requires the parties to arbitrate in Missouri. As such, where enforcement of the North Carolina statute in this manner would "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration," the statute is preempted by the FAA. Southland, 465 U.S. at 10. Pursuant to section 2 of the FAA, the court must enforce the arbitration agreement in accordance with its terms, which requires the parties to arbitrate in Missouri, preempting the North Carolina statute to the contrary.

Plaintiff argues that Volt requires the court to apply the North Carolina statute to invalidate the arbitration agreement. Volt, however, is distinguishable. There, interpreting a construction contract governed by California law, the court held that the FAA does not preempt a California state procedural rule which "permits a court to stay arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it." 489 U.S. at 471. The Supreme Court reasoned that "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed." Id. at 479. In the instant case, by contrast, application of the North Carolina statute as plaintiff urges would not result in merely staying arbitration pending litigation in North Carolina, but rather extinguishing arbitration altogether. Thus, the North Carolina statute falls squarely within the preempted category of state laws as recognized by Volt which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Id. at 478 (quoting Southland, 465 U.S. at 10).

12

Plaintiff also argues that several district court cases cited by defendants finding that the FAA preempts N.C. Gen. Stat. §§ 22B-2 and 22B-3 are distinguishable because none of those cases involved a contract requiring application of North Carolina law.[3] Notably, however, in <u>Southern Concrete Products, Inc. v. ARCO Design/Build, Inc.</u>, No. 1:11-cv-194, 2012 WL 1067906 (W.D.N.C. March 29, 2012), the district court upheld an arbitration provision like the one here requiring arbitration in Missouri, even though the contract required application of North Carolina law, on the basis that the FAA pre-empts North Carolina forum selection statute, N.C. Gen. Stat. § 22B-2. 2012 WL 1067906 *2.

In sum, the parties' arbitration agreement is neither unconscionable nor invalidated by N.C. Gen. Stat. §§ 22B-2 and 22B-3. Accordingly, the court turns next to consideration of whether plaintiff's claims fall within the scope of the arbitration agreement.

### 3. Claims subject to arbitration

As noted above, the subcontract agreement in this case requires arbitration of "[a]ny Claim arising out of or related to the Agreement." (Compl. Ex. B, section XXVI.A). The Supreme Court and the Fourth Circuit have recognized that such language represents a "broad" arbitration provision. <u>Drews Distrib., Inc. v. Silicon Gaming, Inc.</u>, 245 F.3d 347, 350 (4th Cir. 2001) (quoting <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 398 (1967)). On the basis of this broad language, plaintiff's state law claims against Clayco squarely fall within the scope of the arbitration agreement. Indeed the complaint in this case expressly states that the claims against Clayco arise out of the execution and performance of the subcontract agreement. (Compl. ¶ 4).

---

[3] <u>See</u>, <u>e.g.</u>, <u>Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC</u>, 792 F. Supp. 2d 897, 902 (E.D.N.C. 2011); <u>Aspen Spa Properties, LLC v. Int'l Design Concepts</u>, LLC, 527 F. Supp. 2d 469, 473 (E.D.N.C. 2007).

Despite this plain statement in its complaint, plaintiff argues in opposition to defendants' motion that plaintiff's state statutory claim against Clayco is "[u]nrelated to the [s]ubcontract." (Opp. at 12). Even assuming, as plaintiff argues, that plaintiff's state statutory claim "arises out of Clayco's wrongful withholding of payments due on this project based on other projects that are not related to the Subcontract at issue," such withholding of payment is still actionable by virtue of plaintiff's alleged performance under the subcontract agreement. See Compl. ¶ 42 (stating in support of state statutory claim that payment was required under the "Contract" defined as the subcontract agreement). Accordingly, the state statutory claim is a claim "arising out of or related to the Agreement." (Compl. Ex. B, section XXVI.A).

Plaintiff's Miller Act claim asserted against defendant Travelers, by contrast, presents a different set of issues with respect to whether this claim falls within the scope of the arbitration provision. On the one hand, Travelers is not a party to the subcontract agreement, and the arbitration provision expressly provides that "payment bond claims filed with a Court shall be promptly stayed pending resolution of the dispute in accordance with these dispute resolution provisions." (Compl. Ex. B, sections XXVI.K) (emphasis added). On the other hand, plaintiff's Miller Act claim is premised upon its work on the project, which was governed by the subcontract agreement. (Compl. ¶ 56). Accordingly, there is some support for characterizing the Miller Act claim against Travelers as a "[c]laim arising out of or related to the Agreement." (Compl. Ex. B, section XXVI.A). See Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 395-96 (4th Cir.2005) (recognizing that arbitration with a non-signatory may be appropriate "[w]hen each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, and the signatory's claims arise out of an relate directly to the written agreement") (citations omitted).

14

Touching on these considerations, the parties propose significantly diverging views concerning the impact of plaintiff's Miller Act claim on the course of proceedings in this court. Plaintiff proposes that the court must allow continued litigation of the Miller Act claim to the exclusion of arbitration. (Opp. at 13). Defendants propose that the court should dismiss all of plaintiff's claims and compel arbitration of all the claims, including the Miller Act claim. (Reply at 8-10). For the reasons stated below, the court finds neither the plaintiff's proposed resolution nor the defendants' proposed resolution regarding the Miller Act claim appropriate under the circumstances of this case.

Contrary to plaintiff's position, even assuming the Miller Act claim is not itself arbitrable and that jurisdiction for such a claim lies in this court, it is appropriate to stay the Miller Act claim rather than allow plaintiff to proceed on the Miller Act claim while the other claims are arbitrated.[4] Although the Fourth Circuit has not directly addressed the issue, one district court within this circuit has recognized "a long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the Miller Act claim pending arbitration of the underlying dispute." U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co., 349 F. Supp. 2d 934, 941 (D. Md. 2004) (quoting U.S. ex rel. Tanner v. Daco Constr., Inc., 38 F.Supp.2d 1299, 1304-05 (N.D.Okla.1999) (collecting cases)). This approach is reflected in the Fourth Circuit's decision in Agostini Bros. Bldg. Corp. v. U.S. on Behalf of and For Use of Virginia-Carolina Elec. Works, 142 F.2d 854 (4th Cir. 1944), where the court stayed proceedings on a Miller Act claim "brought by a

---

[4] As such, the court need not reach plaintiff's alternative argument that defendant waived its right to compel arbitration of the Miller Act claim by failing to make a demand for arbitration. (See Opp. at 14-15).

subcontractor against a contractor and surety" pending arbitration of contract claims arising under a contract for the construction of a government building. 142 F.3d at 855.[5]

Based on the same line of cases, defendant's primary suggestion to dismiss rather than stay all of plaintiff's claims, including plaintiff's Miller Act claim, also is not the proper course of action. Indeed a stay is consistent with the provision in the subcontract noted above that provides that "payment bond claims filed with a Court shall be promptly <u>stayed</u> pending resolution of the dispute in accordance with these dispute resolution provisions." (Compl. Ex. B, sections XXVI.K) (emphasis added). In addition, while there is some support in the cases cited by defendants for compelling arbitration of stayed Miller Act claims,[6] this court does not have authority to compel arbitration as defendants request under present circumstances.

---

[5] Federal courts outside of this Circuit have also followed this approach, including in recent district court decisions. See e.g. United States ex rel. Portland Constr. Co. v. Weiss Pollution Control Co., 532 F.2d 1009, 1013 (5th Cir.1976) (noting, in a Miller Act case, "the Federal Arbitration Act specifically provides for a stay rather than a dismissal"); United States v. Endicott Constructors, Corp., CA 12-10152-MLW, 2012 WL 6553457 *1-*2 (D. Mass. Dec. 13, 2012) ("proceedings brought against a contractor and surety under the Miller Act, are typically stayed pending arbitration"); U.S. ex rel. Postel Erection Grp., L.L.C. v. Travelers Cas. & Ins. Co. of Am., 6:12-CV-182-ORL-37, 2012 WL 2505674 (M.D. Fla. June 28, 2012) ("Regardless of whether a subcontractor is bound by an arbitration clause, a subcontractor's claim against a surety on a payment bond may be stayed pending arbitration between the primary contractor and the subcontractor.").

[6] See e.g., U.S. for Use & Benefit of Air-Con, Inc. v. Al-Con Dev. Corp., 271 F.2d 904, 905 (4th Cir. 1959) (affirming an order staying litigation and directing arbitration of all claims in suit brought by subcontractor under the Miller act against contractor and sureties, based on application of Virginia arbitration law); U.S. for Use & Benefit of Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc., 364 F.2d 705, 706 (2d Cir. 1966) (affirming district court order granting motion to stay proceedings in an action to recover contract damages brought by appellant against appellees,1 pursuant to Sections 1 and 2 of the Miller Act. 40 U.S.C. §§ 270a-270b). Notably, in both cases, the court did not dismiss the plaintiffs' claims, but rather stayed them pending arbitration.

As noted above, the subcontract agreement provides that mediation and arbitration shall be conducted in St. Louis, Missouri, which is within the Eastern District of Missouri. With respect to district court action in compelling arbitration, section 4 of the Federal Arbitration Act provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. <u>The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed</u>.

9 U.S.C. § 4 (emphasis added). A majority of courts interpreting this provision have held that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4." <u>Ansari v. Qwest Commc'ns Corp.</u>, 414 F.3d 1214, 1219-20 (10th Cir. 2005) (citing, among other decisions, <u>Inland Bulk Transfer Co. v. Cummins Engine Co.</u>, 332 F.3d 1007, 1018 (6th Cir.2003); <u>Mgmt. Recruiters Int'l, Inc. v. Bloor</u>, 129 F.3d 851, 854 (6th Cir.1997); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer</u>, 49 F.3d 323, 327 (7th Cir.1995)).

Although the Fourth Circuit has not directly addressed the issue, the Fourth Circuit has recognized that "section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the court," <u>Agostini</u>, 142 F.2d at 857, thus reinforcing the determination here that a stay pending arbitration is warranted, even though section 4 does not provide the court authority to compel the arbitration proceedings. To this end, the court in <u>Agostini</u> further noted that "there is

17

no reason to imply that the power to grant a stay is conditioned upon the existence of power to compel arbitration in accordance with section 4 of the act." Id.

More recently, the Fourth Circuit recognized the same rule in Elox Corp. v. Colt Indus., Inc., No. 90-2456, 1991 WL 263127, *1 (4th Cir. Dec 16, 1991) ("Federal Arbitration Act provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. Further, if a court orders arbitration, the arbitration must be held in the same district as the court.") (citations omitted). And, several district courts in the Fourth Circuit recently have recognized that a district court does not have authority to compel arbitration in another district. See e.g., Southern Concrete Products, 2012 WL 1067906 *8 ("a district court lacks authority under § 4 of the FAA to compel arbitration outside of its geographic jurisdiction"); Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC, 792 F. Supp. 2d 897, 904 (E.D.N.C. 2011) ("This Court cannot compel arbitration in another district.").

Accordingly, the court is limited to staying proceedings in this case pending arbitration in St. Louis, Missouri, as specified in the parties' arbitration agreement. The court expresses no opinion on whether defendant Travelers can compel plaintiff to arbitrate the Miller Act claim. It suffices for present purposes that plaintiff's claims against Clayco are arbitrable, and that plaintiff's claims asserted in this litigation, including plaintiff's Miller Act claims against Travelers, properly will be stayed by this court.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss and, in the alternative, motion to stay and compel arbitration (DE 19) is GRANTED IN PART and DENIED IN PART as follows.

18

Defendants' motion to dismiss is DENIED. Defendants' motion to stay this action is GRANTED, and this matter is hereby stayed pending resolution of arbitration in St. Louis, Missouri. Defendants' motion to compel arbitration is DENIED. The clerk is DIRECTED to remove this case from the court's active docket, with leave for any party to move to reinstate the same on the active docket at the conclusion of arbitration proceedings.

SO ORDERED, this the 23rd day of September, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge